## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## ELKINS

**JOSEPH BRENT LOUGH,**

        **Plaintiff,**

**v.**                                   **Civil Action No.: 2:10-CV-7**
                                                 **JUDGE MAXWELL**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

        **Defendant.**

## REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [12], DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [11], AND AFFIRM THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

## I.      INTRODUCTION

On January 19, 2010, Plaintiff Joseph Brent Lough ("Plaintiff"), by counsel Carter Zerbe, Esq., filed a complaint in this Court to obtain judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner" or "Defendant") pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). On March 30, 2010, the Commissioner, by counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed an answer and administrative transcript of the proceedings. On April 26, 2010 and May 25, 2010, Plaintiff and the Commissioner filed their respective Motions for Summary Judgment [11] [12]. Following review of the motions by the parties and the transcript of administrative proceedings, the undersigned Magistrate Judge now issues this Report and Recommendation to the District Judge.

## II.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND AND REVIEW OF ADMINISTRATIVE LAW JUDGE DECISION

### A.    Procedural Background

On April 17, 2007, Plaintiff applied for supplemental security income, alleging disability since his date of birth on May 15, 1986. Tr. at 128-31. On February 5, 2009, Plaintiff also filed an application for child's insurance benefits, which was combined with Plaintiff's application for supplemental security income. Tr. at 9. On January 8, 2009, the United States Administrative Law Judge ("ALJ") held a hearing, and Plaintiff testified under oath. Tr. at 20-69. *See* 20 C.F.R. § 404.929 (hearing before an administrative law judge). On March 24, 2009, the ALJ issued an unfavorable decision to Plaintiff, finding him not entitled to a period of disability. Tr. at 6-19. On November 20, 2009, the Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner. Tr. at 1-4. *See* 20 C.F.R. § 404.967 (Appeals Council review--general); *see also* 20 C.F.R. § 404.981 (Effect of Appeals Council's decision or denial of review). Plaintiff now requests judicial review of the ALJ decision denying his application for disability.

### B.    Standard for Judicial Review of a Decision by the Administrative Law Judge in a Disability Case

> Judicial review of a final decision regarding disability benefits is limited to determining whether the findings...are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g). "The findings...as to any fact, if supported by substantial evidence, shall be conclusive" *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The phrase "supported by substantial evidence" means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *See Perales*, 402 U.S. at 401, 91 S. Ct. at 1427 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216 (1938))...Substantial evidence...consists of more than a mere scintilla of evidence but may

be somewhat less than a preponderance...Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment...if the decision is supported by substantial evidence. *See Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *Snyder v. Ribicoff*, 307 F.2d 518, 529 (4th Cir.1962). Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. *King v. Califano*, 599 F.2d 597, 599 (4th Cir.1979). **"This Court does not find facts or try the case *de novo* when reviewing disability determinations."** *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir.1976); "We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of non-persuasion." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.1972). "The language of the Social Security Act precludes a *de novo* judicial proceeding and requires that the court uphold the decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"

*See Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990) (emphasis added). In applying these legal standards, the Court reviews the decision by the ALJ.

### C.      Standard for Disability and Five-Step Evaluation Process

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work..."[W]ork which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

*See* 42 U.S.C. § 423(d)(2)(A). In order for the ALJ to determine whether a plaintiff is disabled and therefore entitled to disability insurance benefits, the Social Security Administration has established a five-step sequential evaluation process. The five steps are as follows (including Residual

Functional Capacity Assessment prior to Step Four):

Step One:     Determine whether the plaintiff is engaging in substantial gainful activity;

Step Two:     Determine whether the plaintiff has a severe impairment;

Step Three:   Determine whether the plaintiff has a "listed" impairment;

* Residual Functional Capacity Assessment *
(Needs to be Determined Before Proceeding to Step Four)

Step Four:    Compare residual functional capacity assessment to determine whether the plaintiff can perform past relevant work;

Step Five:    Consider residual functional capacity assessment, age, education, and work experience to determine if the plaintiff can perform any other work.

*See* 20 C.F.R. § 404.1520 (evaluation of disability in general). In following the five-step process and coming to a decision, the ALJ makes findings of fact and conclusions of law. This Court will review the decision by the ALJ to determine whether it is supported by substantial evidence, in accordance with 42 U.S.C. § 405(g) and *Hays*.

### D.     Review of ALJ Application of Five-Step Evaluation Process and Whether it is Supported by Substantial Evidence

#### 1.     Step One: Determine whether the Plaintiff is Engaging in Substantial Gainful Activity

At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled...

Substantial gainful activity is work activity that is both substantial and gainful:

(a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when

you worked before.

(b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized....

If you are working or have worked as an employee...[g]enerally, in evaluating your work activity for substantial gainful activity purposes, our primary consideration will be the earnings you derive from the work activity...

[I]f you are self-employed [w]e will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity...

If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled **regardless of your medical condition** or your age, education, and work experience.

*See* 20 C.F.R. § 404.1520(a); *see also* 20 C.F.R. § 404.1572; *see also* 20 C.F.R. § 404.1574(a) (evaluation guide for employees who are not self-employed); *see also* 20 C.F.R. § 404.1575(a)(2) (evaluation guide if you are self-employed); *see also* 20 C.F.R. § 404.1520(b) (emphasis added). The ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of disability of May 15, 1986. Tr. at 11.

## 2. Step Two: Determine whether the Plaintiff has a Severe Impairment

At the second step, we consider the medical severity of your impairment(s)...[A] severe impairment...[is] any impairment or combination of impairments which **significantly limits your physical or mental ability to do basic work activities**...We will not consider your age, education, and work experience...

Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months...

An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic

work activities. **Basic work activities...mean[s] the abilities and aptitudes necessary to do most jobs. Examples of these include--1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.**

*See* 20 C.F.R. § 404.1520; *see also* 20 C.F.R. § 404.1509; *see also* 20 C.F.R. § 404.1521; *see also Luckey v. U.S. Dept. of Health & Human Services*, 890 F.2d 666 (4th Cir. 1989). The ALJ found Plaintiff to have the following severe impairments since May 15, 1986: congenital bone disease; bilateral hand and foot deformities, with ectrodactyly / ectodermal dysplasia syndrome and bilateral cleft foot, with absence of second and fusion of third and fourth toes; status post surgery for cholesteatoma; status post surgery for a cleft lip and palate, with other dental problems; adjustment disorder with mixed affect; major depressive disorder with psychotic features and social phobia; and generalized anxiety disorder; with a history of cannabis abuse. Tr. at 11-12.

### 3. Step Three: Determine whether the Plaintiff has a "Listed" Impairment

At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. *See* 20 C.F.R. § 404.1520(a).

The Listing of Impairments...describes...impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. *See* 20 C.F.R. § 404.1525(a).

Most of the listed impairments are permanent or expected to result in death. *See* 20 C.F.R. § 404.1525(a).

We need evidence from acceptable medical sources (e.g. licensed physicians) to establish whether you have a medically determinable

impairment(s). *See* 20 C.F.R. § 404.1513(a).

To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies ***all of the criteria*** in the listing. *See* 20 C.F.R. § 404.1513(a) (emphasis added).

***An impairment that manifests only some of those criteria, no matter how severely, does not qualify***. *See Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885 (1990) (emphasis added).

The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing impairment. Tr. at 14.

## * Residual Functional Capacity Assessment *
### (Needs to be Determined Before Proceeding to Step Four)

If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record...We use our residual functional capacity assessment at the fourth step of the sequential evaluation process to determine if you can do your past relevant work...and at the fifth step of the sequential evaluation process (if the evaluation proceeds to this step) to determine if you can adjust to other work...

Residual functional capacity assessment. Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations. We will assess your residual functional capacity based on all the relevant evidence in your case record....

Residual functional capacity is a measurement of the most a claimant can do despite his limitations. *See* 20 C.F.R. § 404.1545(a). According to the Social Security Administration, residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Regulation (SSR) 96-8p. Residual functional capacity is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain). *See* 20 C.F.R. § 404.1529(a).

*See* 20 C.F.R. § 404.1520(e); *see also* 20 C.F.R. § 404.1545(a); *see also Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006). The ALJ reviewed Plaintiff's medical evidence, impairments, physical and mental limitations, pain symptoms, daily activities, and credibility; and from the entire record, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work. Tr. at 16. Specifically, the ALJ found that since May 15, 1986, Plaintiff has the residual functional capacity to perform light work as defined in 404.1567(b) and 416.967(b). In addition, Plaintiff has the following non-exertional limitations: he must be able to change positions briefly (for one to two minutes) every 30 minutes; he can do no work that requires him to stand / walk for more than four hours out of an eight-hour day; he can do no more than occasional pushing / pulling with his upper and lower extremities; he can do no work that requires climbing ladders, ropes, scaffolds, and he can do no more than frequent grasping, and no more than occasional fine fingering with both hands; he can do no work that requires exposure to significant workplace hazards (for example, unprotected heights, or dangerous, moving machinery); he is able to drive; he can do no work that requires exposure to extreme heat, or work in the sunlight; he can do no work that requires contact with the general public; he can do no more than requires close interaction with co-workers [sic grammar]; he can do no fast-paced or assembly line work; and he must be allowed to miss up to one day of work per month. Tr. at 16.

> *Light work* involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work...

> *Sedentary work* involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met...If someone can do light work, we determine that he or she can also do sedentary work.

*See* 20 C.F.R. § 404.1567 (italics added).

### a. The ALJ's Evaluation of the Opinions of Plaintiff's Treating Providers and the State Agency Psychologist

Plaintiff contends that the ALJ did not properly weigh the opinions of Plaintiff's treating providers and the state agency psychologist, *i.e.*, Robert Snuffer, D.O., Plaintiff's primary care physician; Matthew J. DeLuca, MS, a psychotherapist and licensed professional counselor; and Wilda Posey, M.A., a state agency licensed psychologist. Pl. Doc. 11 at 9-13; Pl. Doc. 14 at 1-2.

> Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527. Courts often accord "greater weight to the testimony of a treating physician" because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant. The ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence; rather, "the ALJ holds [the] discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

*Johnson v. Barnhart*, 434 F.3d 650, 654 & n.5 (4th Cir. 2005).

**(1)     The ALJ Reviewed Plaintiff's Medical History, Credibility, Pain Symptoms, and Daily Activities to Evaluate the Opinions of Plaintiff's Treating Providers and the State Agency Psychologist**

The ALJ reviewed Plaintiff's medical history, credibility, pain symptoms, and daily activities to determine whether the evidence in the record supported, and was consistent with, the opinions of Plaintiff's treating providers and the state agency psychologist. Tr. at 12-18.

> When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. § 404.1529(c) and § 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements: 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 96-7p. The ALJ used the two-step process and factors in SSR 96-7p and 20 C.F.R. §§ 404.1529 and 416.929 in evaluating Plaintiff's credibility and the opinions of Plaintiff's treating providers and the state agency psychologist. Tr. at 12-18.

### (a)        The ALJ's Review of the Record from 1986 through 2006

On May 15, 1986, Plaintiff was born with ectrodactyly-ectodermal dysplasia-clefting syndrome, resulting in ectrodactyly of hands and feet and a cleft palate and lip and absence of the second digit on both of his hands and feet. Tr. at 233 & 285-88. Plaintiff also was born with fusion of the third and fourth digits on his right hand and the second and third digits on his left hand. Tr. at 285-86 & 264. Plaintiff underwent a number of operations as a child including surgeries to correct his urethra, cleft palate, cleft lip, dental problems, nasal obstruction, and to place tubes in his ears. Tr. at 234-35, 241, 250-53 & 256-58.

In May 2004, Plaintiff filed for supplemental security income. Tr. at 9.

In February 2006, an ALJ denied Plaintiff's application for disability following an administrative hearing. Tr. at 9 & 73-81.

In June 2006, the Appeals Council denied review of the ALJ's decision. Tr. at 9 & 70-72. Plaintiff did not appeal the 2006 decision. Tr. at 9.

### (b)        The ALJ's Review of the Record from 2007

On April 12, 2007, psychotherapist DeLuca wrote a letter to express his psychological impressions of Plaintiff. Tr. at 274. In the letter, DeLuca stated that Plaintiff is a 20 year old coping with physical and psychological symptoms of EEC since birth. Tr. at 274. DeLuca opined that Plaintiff "presents as socially withdrawn, anxious, irritable, poorly motivated, feelings of worthlessness and poor self-esteem, embarrassment and discouragement over his physical limitations, mood swings, depressive symptoms, poor transitional skills, and numerous failings at career and job development activities." Tr. at 274. DeLuca further stated that Plaintiff "has experienced significant setbacks, particularly, in the area of career development as he is unable to

achieve a degree in his chosen field due to his physical limitations...[T]his evaluator does not see [Plaintiff] being able to achieve proficient or successful integration into a workplace environment." Tr. at 274.

On April 13, 2007, Dr. Snuffer, of Weston Family Medical Care, wrote a letter stating that Plaintiff has been a patient for two years and is now in the process of trying to get disability. Tr. at 275-76. Dr. Snuffer opined that Plaintiff's fine motor ability is significantly decreased; that he lacks sweat glands, which causes him to overheat; and that he lacks proper tear ducts, which causes his eyes to stay red, inflamed, and dry. Tr. at 275. Dr. Snuffer said that Plaintiff has tried to work at multiple places but has failed because his hand deformities make him much less efficient at most tasks and his physical deformities cause him to be extremely self-conscious and withdrawn socially. Tr. at 275. Dr. Snuffer noted that while Plaintiff has the mental aptitude to perform some jobs, it is very difficult for him from a physical standpoint. Tr. at 275. Dr. Snuffer said Plaintiff is being treated for agoraphobia with counseling. Tr. at 275. Dr. Snuffer concluded that Plaintiff is currently unable to work for multiple reasons and should qualify for disability. Tr. at 275.

On April 17, 2007, Plaintiff filed a second application for supplemental security income, alleging disability since his date of birth on May 15, 1986. Tr. at 128-31.

On June 22, 2007, Plaintiff had a State Agency consultative mental examination with psychologist Posey. Tr. at 291-96. Posey stated that Plaintiff currently works for the Department of Highways, taking care of permits. Tr. at 291. Posey noted that Plaintiff was withdrawn and angry but cooperative during the evaluation. Tr. at 291. Plaintiff said he was born with ectrodactyly-ectodermal dysplasia and that it interferes with working but he continues to work. Tr. at 292. Plaintiff reported that he attended therapy with psychotherapist DeLuca five or six times and "it did

not help." Tr. at 292. Plaintiff said he used alcohol while attending West Virginia University in 2004, and then he dropped out of college and was drinking every day. Tr. at 293. Plaintiff drank 5-12 beers a day, but now he only drinks one beer a week and occasionally "gets buzzed on weekends." Tr. at 293. Plaintiff had a public intoxication arrest in 2006 and had to perform community service. Tr. at 293. Plaintiff reported that he has used marijuana every day since the seventh grade. Tr. at 293. His last use was "last night." Tr. at 293. Plaintiff said, "I usually smoke before bed. It helps me to fall asleep. I think it's stupid that it's illegal cause it helps calm me down." Tr. at 293. Plaintiff reported graduating high school with a GPA of 3.2 to 3.5. Tr. at 293. He played in band in school since the fourth grade through his junior year of high school. Tr. at 293. Plaintiff denied any trouble in school or repeating any grades. Tr. at 293. Plaintiff said he dropped out of West Virginia University due to difficulty dealing with so many people. Tr. at 293. Plaintiff said he has worked as a telemarketer and he worked at Taco Bell and quit both places because he did not like it. Tr. at 293. Plaintiff also worked at a car wash. Tr. at 293. Plaintiff reported difficulty with being around crowds of people. Tr. at 295. Plaintiff reported having hallucinations, hearing voices, seeing things, seeing bugs in his bed and seeing things crawl his floor such as a small kid under a blanket. Tr. at 295. Psychologist Posey found Plaintiff's social functioning to be mildly deficient since he reported recreation on the weekends of getting drunk or getting high. Tr. at 296. Posey found Plaintiff's concentration to be poor since he "can't do mental math." Tr. at 296. Posey found his pace to be slow, his immediate memory as normal, his recent memory to be severely deficient, and his prognosis as poor. Tr. at 295-96. She found that Plaintiff is capable of managing finances if he should receive benefits. Tr. at 296. Posey diagnosed Plaintiff with major depressive disorder, with psychotic features, social phobia, generalized anxiety disorder, and cannabis abuse. Tr. at 295.

On August 7, 2007, Plaintiff had regular check up with Dr. Snuffer. Tr. at 348-49. Plaintiff reported no complaints; that he has "been doing ok recently," and he is enrolling in classes at Glenville Tr. at 348. Plaintiff reported that he does not smoke or drink alcohol and that he is not taking any medications. Tr. at 348. Dr. Snuffer found that Plaintiff was well nourished and pleasant. Tr. at 348. Dr. Snuffer diagnosed agoraphobia and noted that Plaintiff would contact his office if he becomes too anxious at school. Tr. at 349.

### (c)        The ALJ's Review of the Record from 2008 through 2009

On February 7, 2008, Plaintiff had an office visit with Dr. Snuffer after falling and injuring his wrist. Tr. at 346-47. Plaintiff reported that he did not smoke, that he has been drinking a lot, but he denied drinking except for weekend partying. Tr. at 346. Dr. Snuffer found that Plaintiff was well nourished and pleasant. Tr. at 346.

On September 23, 2008, Plaintiff had an office visit with Dr. Snuffer. Tr. at 342-43. Plaintiff said that he has suffered from rectal and anal hemorrhaging for two years but this is the first time he told the doctor. Tr. at 342. Plaintiff stated that he was very depressed and not doing well in school but that he is afraid to take his antidepressant medication. Tr. at 342. Plaintiff reported that he does not smoke or drink alcohol and that he is not taking any medications. Tr. at 342. Dr. Snuffer found that Plaintiff was well nourished and pleasant. Tr. at 342.

On December 30, 2008, Dr. Snuffer wrote a letter to Plaintiff's attorney, elaborating on his prior letter from April 13, 2007. Tr. at 340-41. Dr. Snuffer opined that Plaintiff's claw-like deformity causes significant pain and reduced functioning in his hands. Tr. at 340. Dr. Snuffer further stated that Plaintiff's motor skills are poor and that his hands tend to be coarse and dry. Tr. at 340. Dr. Snuffer said that Plaintiff has severe bouts of depression and withdrawal, and that he last

attended counseling with psychotherapist DeLuca in April 2007. Tr. at 341. Dr. Snuffer noted that Plaintiff is unable to use his hands repetitively. Tr. at 341. Dr. Snuffer stated that in his opinion, Plaintiff's inability to be employed lies in the combination of factors of his need to rest his hands and eyes and his extreme emotional frustration with having to live with the residuals of his severe developmental disorder. Tr. at 341.

On January 8, 2009, at the ALJ hearing, Plaintiff testified that he graduated from high school and did not have any special education classes. Tr. at 31. Plaintiff studied English in college for one and one-half years before changing his major to music. Tr. at 31-32. Plaintiff said he would be starting at Glenville State College that same month, January 2009. Tr. at 32. He will be attending school 5 days a week from 9:30 a.m. to 3:00 p.m. Tr. at 49. Plaintiff said he has not undergone any operations as an adult, and he has not been told that any additional operations are necessary. Tr. at 35-36. Plaintiff confirmed that he told the psychologist that he smokes marijuana daily because it calms him down. Tr. at 38. Plaintiff acknowledged using marijuana even though it is illegal. Tr. at 39. He said that he obtains his marijuana for free because "you got to have good friends." Tr. at 39. Plaintiff reported that he is no longer seeing a psychologist. Tr. at 46. Plaintiff said he does not need any assistance with taking a shower, taking a bath, styling his hair, trimming his beard, dressing himself, or toileting. Tr. at 49. Plaintiff said that he has not any physical therapy and he does not use any assistive devices to walk. Tr. at 36. Plaintiff reported that his hobbies were playing the drums, listening to music, and playing video games. Tr. at 51. Plaintiff stated that he has played the drums since the fourth grade. Tr. at 41. The ALJ asked if Plaintiff was good at playing the drums and he said "not bad." Tr. at 41. The ALJ asked how he was able to use the sticks with his hands and Plaintiff said "I just hold them in my hands. I don't really know." Tr. at 41-42. The ALJ asked if

Plaintiff had to make any adjustments in holding the sticks in order to play the drums and Plaintiff said "no." Tr. at 42. Plaintiff said he can sit and play "really as long as it needs to be I guess." Tr. at 44. Plaintiff said he plays music at a friend's house, who is a guitar player, and Plaintiff used to be in a band. Tr. at 43 & 52. Plaintiff reported that since the date of his disability application in [April] 2007, he has played in a band and that they would perform one or two times a week in bars, clubs, and houses for audiences of 50 people or less. Tr. at 43-44 & 59.

### (d) Conclusion by the ALJ as to Plaintiff's Credibility

Plaintiff contends that the ALJ did not properly assess his credibility. Pl. Doc 11 at 14-15. After considering the evidence in the record, the ALJ found that Plaintiff's medically determinable impairments could reasonably produce his alleged symptoms, but Plaintiff's statements concerning the intensity, duration, and limiting effects of those symptoms were not entirely credible. Tr. at 17. The ALJ found as follows:

> The claimant is not entirely credible, and only fair at best, particularly with regard to his allegations of pain, limitations, and overall disability. Despite the claimant's congenital lack of digits in his hands and cracking skin, he has played drums since [the fourth grade], including playing in bands the perform inside clubs. He has also testified that he has feelings of self-consciousness and stress when he is around others. He has attended school, however, and changed his major to music in January of 2009. He has shown no indication of social limitations when involved in band activities, or performing in public. His activities have also included playing video games, which would require significant use of the hands, just as would playing the drums. He has indicated that he has trouble grasping objects, but he is able to write. He is able to dress himself and care for his personal hygiene, and he can use the telephone, prepare light meals, do the laundry, shop for food and do light housecleaning. The claimant has a significant history of marijuana abuse that he uses because it makes him feel better, according to his testimony. His physicians, however, have not prescribed the claimant medication of any kind for long-term pain management. The claimant has also had other evidence of not following prescribed treatment.

> For example, on September 23, 2008, the claimant complained that his depression had been getting worse, but that he was afraid of his antidepressant medications.

Tr. at 17. The ALJ concluded that Plaintiff's allegations of pain, limitations, and overall disability were not consistent with his medical history and daily activities. Tr. at 17. Plaintiff contends that the ALJ erroneously relied on selected evidence from the record and did not properly evaluate Plaintiff's daily activities in accordance with *Hines v. Barnhart*, 453 F.3d 559. Pl. Doc. 11 at 14-15. In *Hines*, the Fourth Circuit found that the ALJ erred in concluding that the plaintiff's testimony was inconsistent with his daily activities. *See Hines*, 453 F.3d at 565-66. The Fourth Circuit noted that the ALJ selectively cited evidence of daily activities that the plaintiff was able to perform. *See Hines*, 453 F.3d at 565-66. However, in the case, *sub judice*, the ALJ cited evidence from the entire record in making his decision, in accordance with SSR 96-7p and *Hines*. *See* Tr. at 9-19. After reviewing the allegations of pain, limitations, and overall disability, the ALJ found that the allegations were not consistent with Plaintiff's medical history and daily activities. Tr. at 17. Therefore, substantial evidence supports the ALJ's finding that Plaintiff was not entirely credible.

### (2)    Conclusion by the ALJ as to the Opinions of Plaintiff's Treating Providers and the State Agency Psychologist

Plaintiff contends that the ALJ did not properly weigh the opinions of Plaintiff's treating providers and the state agency psychologist, *i.e.*, Dr. Snuffer, Plaintiff's primary care physician; Matthew DeLuca, a psychotherapist and licensed professional counselor; and Wilda Posey, a state agency licensed psychologist. Pl. Doc. 11 at 9-13; Pl. Doc. 14 at 1-2. The ALJ reviewed Plaintiff's medical history, credibility, pain symptoms, and daily activities to determine whether the evidence in the record supported, and was consistent with, the opinions of Plaintiff's treating providers and the state agency psychologist. Tr. at 12-18. The ALJ found as follows:

The Social Security Administration also requires the undersigned to consider the findings of fact by the State Agency consultants about the nature and severity of the claimant's impairments. The undersigned is not, however, bound by these findings. 20 CFR 404.1527 and SSR 96-6p...The undersigned has considered these opinions and, to the extent that they show that the claimant's ability to perform exertional work or non-exertional work requirements are not grossly restricted, and to the extent that the opinions seem consistent with the majority of the objective findings in the medical evidence, the undersigned agrees with them...

Dr. Snuffer authored an open letter dated April 13, 2007, regarding his care for the claimant over the two prior years for ectrodactyly-ectodermal dysplasia, which resulted in congenital problems such as a cleft palate, lips, problems with his ears, and fusion / functional deformities of his hands and feet. Dr. Snuffer also noted that the claimant had decreased fine motor ability, some problems with balance from his feet deformities, an increased likelihood of overheating because of a lack of sweat glands, and problems with keeping his eyes moist because of a lack of tear ducts. Dr. Snuffer concluded with the opinion that the claimant was "currently unable to work for multiple reasons." In a letter to the claimant's representative dated December 30, 2008, the claimant's physician, Dr. Snuffer, elaborated upon his letter from April 13, 2007, regarding the claimant's medical status. He concluded that the claimant was unable to be employed because of the combination of factors including his need to rest his hands and eyes, as well as extreme emotional frustration. In both cases, Dr. Snuffer has rendered opinions that are ostensibly offered to be dispositive to the issue of disability *sub judice*, an issue reserved exclusively to the Commissioner. The undersigned therefore cannot accord the opinion any special significant or weight for the purposes of determining disability. Moreover, Dr. Snuffer does not address indications in his medical records that the claimant's medical status was stable. For example, upon examination of the claimant on January of 2007, Dr. Snuffer noted that the claimant was "well nourished and pleasant."

The undersigned also accords less weight to the opinions of a counselor [Mr. DeLuca]. The claimant's mental health counselor authored an open letter on April 12, 2007, in which he indicated that the claimant had problems with social withdrawal, anxiety, irritation, and poor motivation and which concluded with an opinion that the claimant was not able to achieve proficient or successful integration into a workplace environment. Again, the opinion rendered is

> ostensibly offered to be dispositive to the issue of disability *sub judice*, an issue reserved exclusively to the Commissioner. The undersigned therefore cannot accord the opinion any special significant or weight for the purposes of determining disability. Further, the opinion is offered by a counselor / social worker that is not considered to be "acceptable sources" of medical evidence by the regulations. Rather, opinions of this nature are accorded no more weight than opinions of public and private social welfare agencies, observations by non-medical sources, naturopaths, or physician assistants. *Compare* 20 C.F.R. 416.913(a) *with* 20 C.F.R. 416.913(d).

Tr. at 18. Plaintiff contends that the ALJ did not provide sufficient reasons for rejecting the opinions of the treating providers and the state agency psychologist. Pl. Doc. 11 at 9-13; Pl. Doc. 14 at 1-2. However, the ALJ thoroughly reviewed the evidence in the record and made a finding as to Plaintiff's credibility. Tr. at 12-18. Following his thorough review of the evidence and his finding as to Plaintiff's credibility, the ALJ stated that he agreed with the state agency medical opinions to the extent that they were consistent with the majority of the objective findings in the medical evidence. Tr. at 18. In addition, the ALJ noted that Dr. Snuffer did not address the indications in the medical records that Plaintiff's medical status was stable. Tr. at 18. Finally, the ALJ noted that Mr. DeLuca is not considered an acceptable source of medical evidence, according to 20 C.F.R. § 416.913(a). Tr. at 18.

Plaintiff contends that the ALJ cited the obvious by noting that decisions regarding disability are reserved for the Commissioner. Pl. Doc. 11 at 10. However, the ALJ was simply recognizing that he must disregard all of Dr. Snuffer and Mr. DeLuca's opinions that Plaintiff is "not...able to achieve proficient or successful integration into a workplace environment;" or that Plaintiff is "...currently unable to work for multiple reasons and should qualify for disability;" or "the basis of his inability to be employed lies in the combination of factors..." *See* Tr. at 274, 275 & 341 (DeLuca and Snuffer letters).

> Medical sources often offer opinions about whether an individual who has applied for Title II or Title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5P. After fully reviewing Plaintiff's medical history, credibility, pain symptoms, and daily activities, the ALJ found that the record did not support, and was not consistent with, the opinions of Plaintiff's treating providers and the state agency psychologist. Tr. at 12-18. Substantial evidence supports the ALJ's findings regarding Plaintiff's treating providers and the state agency psychologist.

### b. Plaintiff's Prior Disability Claim from 2004 and Residual Functional Capacity Assessment Conclusion by the ALJ

Plaintiff contends that the ALJ incorrectly relied on *Albright v. Commissioner of Social Sec. Admin.*, 174 F.3d 473 (4th Cir. 1999) in finding that Plaintiff's condition had not deteriorated since his prior disability claim from 2004. Pl. Doc. 11 at 13.

> The SSA's treatment of later-filed applications as separate claims is eminently logical and sensible, reflecting the reality that the mere passage of time often has a deleterious effect on a claimant's physical or mental condition. As Judge Posner recently put it, "*Res judicata* bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994." *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998).

*Albright*, 174 F.3d at 476. Following a review of the record, the ALJ did not find a basis to reopen the prior disability claim. Tr. at 16-17. The ALJ found as follows:

> The objective medical evidence, considered in combination with the

> prior findings, do not indicate that the passage of time has resulted in a substantial change of the severity of the claimant's medical condition. Rather, the medical evidence shows that the claimant's impairments are not degenerative, but rather that the claimant has continued to adjust to his congenital problems and function in spite of them. The period of time from which the claimant's status was last adjudicated has not been so long as to indicate that the claimant's residual functional capacity should be significantly adjusted. The objective medical evidence from 2004 to the present has not shown that the claimant's medical status for his alleged impairments has significantly worsened. The evidence considered for the prior decision does not differ markedly from the evidence considered in the current claims.

Tr. at 16-17. The ALJ reviewed Plaintiff's medical evidence, impairments, physical and mental limitations, pain symptoms, daily activities, and credibility; and from the entire record, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work. Tr. at 16. Substantial evidence supports the ALJ's residual functional capacity assessment that Plaintiff can perform light work.

### c.  New Evidence Submitted to the Appeals Council following the ALJ Decision

On January 8, 2009, the ALJ held the hearing in the instant case. Tr. at 20-69.

On February 3, 2009, Plaintiff had a psychological evaluation and medical assessment with Tony Goudy, Ph.D. Tr. at 354-62. Dr. Goudy noted that Plaintiff "could only recall two of the original four objects after a 20 minute delay, indicative of mild to moderate impairment in recent memory." Tr. at 357. Dr. Goudy reported that "concentration was assessed by having Mr. Lough recite serial sevens." Tr. at 357. Plaintiff "was unable to provide any correct responses, and therefore it is believed that his concentration is markedly impaired." Tr. at 357. Dr. Goudy diagnosed Plaintiff with major depressive disorder, recurrent, severe with psychotic features; anxiety disorder due to ectrodactyly-ectodermal dysplasia (rule/out cannabis abuse); current GAF 50. Tr. at 358. Plaintiff

did not send this report to the ALJ. Pl. Doc. 11 at 11 n.4.

On March 24, 2009, the ALJ issued his decision finding Plaintiff not entitled to a period of disability. Tr. at 6-19.

On April 7, 2009, Plaintiff appealed the ALJ's decision to the Appeals Council. Tr. at 5. Plaintiff submitted Dr. Goudy's evaluation to the Appeals Council. Pl. Doc. 11 at 11 n.4.

On November 20, 2009, the Appeals Council denied Plaintiff's request for review after considering the additional evidence by Dr. Goudy. Tr. at 1-4.

Plaintiff contends that the evaluation by Dr. Goudy is new and material evidence, which would warrant a remand to the ALJ. Pl. Doc. 11 at 11 n.4; Pl. Doc. 14 at 6-7.

"Evidence is new within the meaning of this section if it is not duplicative or cumulative...[e]vidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Wilkins v. Secretary, Dept. of Health and Human Services*, 953 F.2d 93 (4th Cir. 1991).

The Court finds that the evaluation by Dr. Goudy was merely cumulative and would not have changed the ALJ's decision and therefore does not warrant a remand.

### 4. Step Four: Compare Residual Functional Capacity Assessment to Determine whether the Plaintiff Can Perform Past Relevant Work

> At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.
> 20 C.F.R. § 404.1520(a).

> Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it.
> 20 C.F.R. § 404.1560(b).

> Your impairment(s) must prevent you from doing your past relevant work. If we cannot make a determination or decision at the first three

steps of the sequential evaluation process, we will compare our
residual functional capacity assessment...with the physical and mental
demands of your past relevant work. (See § 404.1560(b).) If you can
still do this kind of work, we will find that you are not disabled.
*See* 20 C.F.R. § 404.1520(f).

The ALJ found that Plaintiff can perform his past relevant work as a telemarketer and office
helper after hearing the testimony from the vocational expert. Tr. at 19. The vocational expert
testified that Plaintiff's past relevant work cleaning cars at the auto dealership was medium,
unskilled; his work as an office helper at the Department of Highways was light, unskilled; his work
as a telemarketer was sedentary; semi-skilled (performed at unskilled level); and his work as a fast
food worker was light, unskilled. Tr. at 62. The vocational expert testified that based on Plaintiff's
residual functional capacity, he can perform his past relevant work as a telemarketer and office
helper. Tr. at 64. After determining Plaintiff's residual functional capacity and hearing the
vocational expert's testimony, the ALJ found that Plaintiff can perform his past relevant work. Tr.
at 19. Substantial evidence supports the ALJ's conclusion that Plaintiff can perform his past relevant
work.

**5.      Step Five: Consider Residual Functional Capacity Assessment, Age, Education, and
         Work Experience to Determine if the Plaintiff Can Perform Any Other Work**

At the fifth and last step...

[i]f we find that your residual functional capacity is not enough to
enable you to do any of your past relevant work, we will use the same
residual functional capacity assessment we used to decide if you
could do your past relevant work when we decide if you can adjust
to any other work. We will look at your ability to adjust to other work
by considering your residual functional capacity and your vocational
factors of age, education, and work experience. Any other work
(jobs) that you can adjust to must exist in significant numbers in the
national economy (either in the region where you live or in several
regions in the country).

*See* 20 C.F.R. § 404.1520(a); *see also* 20 C.F.R. § 404.1560(c).

Since the ALJ found that Plaintiff can perform his past relevant work, the evaluation process would naturally terminate at Step Four.

> Substantial evidence...consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance...Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment...if the decision is supported by substantial evidence. *See Laws*, 368 F.2d at 642; *Snyder*, 307 F.2d at 529. **Ultimately, it is the duty of the administrative law judge reviewing a case, and *not* the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.** *King*, 599 F.2d at 599. "This Court does not find facts or try the case *de novo* when reviewing disability determinations." *Seacrist*, 538 F.2d at 1056-57; "We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of non-persuasion." *Blalock*, 483 F.2d at 775. **"The language of the Social Security Act precludes a *de novo* judicial proceeding and requires that the court uphold the decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"**

*See Hays*, 907 F.2d at 1456 (emphasis added). Therefore, this reviewing Court will uphold the ALJ's decision that Plaintiff can perform light work and his past relevant work because it is supported by substantial evidence.

In conclusion, the ALJ found that based on the Plaintiff's applications filed on March 28, 2007 and February 5, 2009, the Plaintiff is not entitled to supplemental security income or child insurance benefits. Tr. at 9 & 19. The Court finds that substantial evidence supports the ALJ's decision that Plaintiff is not disabled and can perform work in the national economy.

## III.     RECOMMENDATION AND CONCLUSION

The undersigned Magistrate Judge hereby **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment **[12]**, **DENY** Plaintiff's Motion for Summary Judgment **[11]**, and **AFFIRM** the Decision of the Administrative Law Judge. The Court notes the Plaintiff's objections to the ruling.

Within fourteen (14) days of receipt of service of this Report and Recommendation, any counsel of record may file with the Clerk of the Court any written objections to this Report and Recommendation. The party should clearly identify the portions of the Report and Recommendation to which the party is filing an objection and the basis for such objection. The party shall also submit a copy of any objections to the District Judge. Failure to timely file objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon this Report and Recommendation. 28 U.S.C. § 636(b)(1).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: August 10, 2010**

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE