**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**JOSEPH BRENT LOUGH,**

    Plaintiff,

v.                                                    **Civil Action No. 2:10-CV-07
(BAILEY)**

**MICHAEL J. ASTRUE,
Commissioner of Social
Security,**

    Defendant.

### ORDER ADOPTING REPORT AND RECOMMENDATION

I.    Introduction

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation ("R&R") of United States Magistrate Judge David J. Joel [Doc. 15] and the plaintiff's Objections thereto [Doc. 18]. Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, failure to file objections permits the district court to review the R&R under the standards that the district court believes are appropriate, and under these circumstances, the parties' right to *de novo* review is waived. *See* **Webb v. Califano,** 468 F.Supp. 825 (E.D. Cal. 1979). Accordingly, this Court will conduct a *de novo* review only as to those portions of the R&R to which the plaintiff objected. The remaining portions of the R&R will be reviewed for clear error. As a result, it is the opinion of this Court that the R&R should be **ORDERED ADOPTED**.

II.  Background

On January 19, 2010, the plaintiff filed his Complaint [Doc. 1] seeking judicial review of an adverse decision by the Commissioner of Social Security pursuant to 42 U.S.C. §§ 405(g) and 1381(c)(3).  Pursuant to the Local Rules, this case was referred to the United States Magistrate Judge David J. Joel, for proposed findings of fact and a recommended disposition.  On April 26, 2010, the plaintiff moved for judgment on the pleadings,  and on May 25, 2010, the defendant moved for summary judgment.

In support of his motion, the plaintiff asserts two claims of error on the part of the Administrative Law Judge ("ALJ").  In his motion, the defendant responds to each of these claims and argues that the ALJ's decision is supported by substantial evidence.  In response, the plaintiff asserts two more claims of error on the part of the ALJ, for a total of four.

First, the plaintiff asserts the ALJ failed to properly consider the treating source opinions of Robert Snuffer, D.O., and Matthew J. Deluca, LPC, and the state agency opinion of Wilda Posey, MLP.  In particular, the plaintiff argues that all three opinions indicated that he was unable to work.  According to the plaintiff, the ALJ failed to adequately explain why he rejected the opinions.  In response, the defendant argues that the ALJ considered all three opinions and gave legally proper reasons for the weight given the opinions.

Second, the plaintiff alleges the ALJ conducted an improper assessment of his credibility.  In particular, the plaintiff argues that the ALJ selectively cited portions of the record to portray him as not credible.  Additionally, the plaintiff argues that the ALJ found he had a wide range of daily activities while improperly ignoring evidence indicating that he

2

was limited in his ability to do these activities. In response, the defendant argues that the ALJ properly discredited the plaintiff, applying the correct standard to the medical evidence of record.

Third, the plaintiff claims the Commissioner failed to consider new and material evidence. Specifically, almost one month after the ALJ's hearing, the plaintiff had a psychological evaluation with Tony Goudy, Ph.D., who found that the plaintiff's concentration was markedly impaired. After the ALJ's unfavorable decision, the plaintiff presented Goudy's report to the Appeals Council. However, after considering the additional evidence, the Appeals Council denied the plaintiff's request for review. The plaintiff argues that Goudy's report is new and material evidence warranting remand to the ALJ.

Fourth, the plaintiff asserts the ALJ improperly handled a prior unfavorable decision rendered three years before. In particular, the plaintiff argues that the ALJ erred when he found that the objective medical evidence, considered in combination with prior findings, did not indicate that the passage of time between the two hearings resulted in a substantial change of the severity of the plaintiff's medical condition.

On June 3, 2010, Magistrate Judge Joel rejected all four of the plaintiff's claims of error and recommended that the plaintiff's motion be denied and the defendant's motion be granted. ([Doc. 15] at 23). First, the magistrate judge concluded that the ALJ properly considered the treating source and state agency opinions. (Id. at 20). In so concluding, the magistrate judge found that each opinion was considered and given the proper amount of weight. (Id. at 17-20). Second, the magistrate judge concluded that the ALJ conducted a proper assessment of the plaintiff's credibility. (Id. at 17). In this regard, the magistrate judge found that the ALJ had not selectively cited evidence of daily activities but had

considered the entire record of evidence in concluding that the objective medical evidence did not support the plaintiff's subjective complaints. (Id. at 16-17). Third, the magistrate judge concluded that the ALJ had properly considered the previous ALJ's decision and found that the plaintiff's condition had not deteriorated since then. (Id. at 21). Again, the magistrate judge found that the ALJ properly considered the entire record in concluding that reopening the previous decision was not warranted. (Id. at 20-21). Fourth, the magistrate judge concluded that the Goudy evidence was not new and material. (Id. at 22). Instead, the magistrate judge found the evidence merely cumulative and that it would not have changed the ALJ's decision. (Id.).

III.   Applicable Standards

   A.   Judicial Review of an ALJ Decision

"Judicial review of a final decision regarding disability benefits is limited to determining whether the findings . . . are supported by substantial evidence and whether the correct law was applied. See 42. U.S.C. § 405(g). 'The findings . . . as to any fact, if supported by substantial evidence, shall be conclusive.' **Richard v. Perales**, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422 (1971); **Coffman v. Bowen**, 829 F.2d 514, 517 (4th Cir. 1987). The phrase 'supported by substantial evidence' means 'such relevant evidence as a reasonable person might accept as adequate to support a conclusion.' See **Perales**, 402 U.S. at 401, 91 S.Ct. at 1427 (citing **Consolidated Edison Co. v. NLRB**, 305 U.S. 197, 229, 59 S.Ct. 206, 216 (1938)). Substantial evidence . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance . . .. Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it

4

the court's function to substitute its judgment . . . if the decision is supported by substantial evidence. *See* **Laws v. Celebrezze**, 368 F.2d 640, 642 (4th Cir. 1966); **Snyder v. Ribicoff**, 307 F.2d 518, 529 (4th Cir. 1962). Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. **King v. Califano**, 599 F.2d 597, 599 (4th Cir. 1979). 'This Court does not find facts or try the case *de novo* when reviewing disability determinations.' **Seacrist v. Weinberger**, 538 F.2d 1054, 1056-57 (4th Cir. 1976)." **Hays v. Sullivan**, 907 F.2d 1453, 1456 (4th Cir. 1990).

    B.    Five-Step Evaluation Process

To determine whether a claimant is disabled, the ALJ considers the following five-step evaluation process:

    Step One:    Determine whether the claimant is engaging in substantial gainful activity;

    Step Two:    Determine whether the claimant has a severe impairment;

    Step Three:    Determine whether the claimant has a listed impairment (20 C.F.R. Part 404, Subpart P, Appendix 1) and conduct a Residual Functional Capacity ("RFC") assessment;

    Step Four:    Consider the RFC assessment to determine whether the claimant can perform past relevant work; and

    Step Five:    Consider the RFC assessment, age, education, and work experience to determine whether the claimant can perform any other work.

*See* 20 C.F.R. § 404.1520.

IV.    Discussion

In his Objections [Doc. 18], filed after an extension on September 2, 2010, the

plaintiff takes issue with the analysis of the magistrate judge. The Court will address these objections as they relate to each of the plaintiff's claims of error discussed above. In so doing, the Court will determine, *de novo*, whether any claim of error necessitates a finding that one of the ALJ's step-conclusions is not supported by substantial evidence.

### A. ALJ's Consideration of Medical Opinion Evidence

In his motion, the plaintiff asserts the ALJ failed to properly consider the medical opinion evidence. The magistrate judge rejected this assertion. The plaintiff objects to the magistrate judge's conclusion. For the reasons set out below, and those more fully stated in the R&R, this Court **OVERRULES** the plaintiff's Objections insofar as they relate to the ALJ's consideration of the medical opinion evidence.

#### 1. Snuffer Opinion

In his Objections, the plaintiff claims the ALJ erred by not adequately considering the Snuffer opinion. ([Doc. 18] at 1). More specifically, the plaintiff argues that the ALJ failed to "make a function-by-function assessment of what Dr. Snuffer found [the plaintiff's] limitations to be" and instead "rejected Dr. Snuffer's opinions in whole because he considered them to be a statement on the ultimate issue of disability." (Id. at 3-4). This Court finds, however, that substantial evidence supports the ALJ's RFC assessment at step three.

On April 13, 2007, Snuffer authored an open letter regarding his care for the plaintiff over the prior two years for ectrodactyly-ectodermal dysplasia. In his letter, Snuffer notes that the plaintiff has difficulty with his hands, eyes, balance, and speech as a result of his congenital and developmental deformities. Snuffer also notes that the plaintiff's deformities

6

cause him to be self-conscious and socially withdrawn. Snuffer then concludes that the plaintiff "is currently unable to work for multiple reasons and should qualify for disability." ([Doc. 8-2] at 79). On December 30, 2008, Snuffer authored a second letter elaborating upon the April 13, 2007, letter. Snuffer states, "In my opinion, I feel the basis of his inability to be employed lies in the combination of factors of his need to rest his hands and eyes, factored in with the extreme emotional frustration he feels, having to live with the residuals of this severe developmental disorder and the seemingly inevitable dependency that developed between him and his parents." ([Doc. 8-3] at 45).

In considering the Snuffer opinion, the ALJ stated:

> The undersigned accords little weight to the opinions of Dr. Snuffer, particular [sic] [in his April 13, 2007, and December 30, 2008, letters]. . . . In both cases, Dr. Snuffer has rendered opinions that are ostensibly offered to be dispositive to the issue of disability *sub judice*, an issue reserved exclusively to the Commissioner. The undersigned therefore cannot accord the opinion any special significant [sic] or weight for the purposes of determining disability. Moreover, Dr. Snuffer does not address indications in his medical records that the claimant's medical status was stable. For example, upon examination of the claimant on January 2007, Dr. Snuffer noted that the claimant was "well nourished, [and] pleasant" (Exhibit B6F/5).

([Doc. 8] at 22).

First, the ALJ's statement noting that the issue of disability is one reserved to the Commissioner must be viewed in its context. Undoubtedly, the ALJ was not outright rejecting Snuffer's opinions as reserved for the Commissioner. Rather, the ALJ simply found that Snuffer's ultimate conclusions to each letter were improper attempts to decide the issue of disability which is reserved to the Commissioner. As such, the ALJ found he could not accord those conclusions significant weight. *See* 20 C.F.R. § 416.927(e)(1).

Second, the ALJ properly questions the bases for Snuffer's conclusions. Specifically,

7

the ALJ takes issue with Snuffer's failure to "address indications in his medical records that the [plaintiff's] medical status was stable." ([Doc. 8] at 22). The ALJ then even gave an example: "For example, upon examination of the claimant on January 2007, Dr. Snuffer noted that the claimant was "well nourished, [and] pleasant." (Id.).

Third, the ALJ did not reject Snuffer's findings regarding the plaintiff's difficulty with his hands and eyes, and the resulting emotional frustration; rather, the ALJ adequately accounted for these limitations in his RFC assessment. With regard to his hand limitations, the ALJ found the plaintiff "could do no more than frequent grasping, and no more than occasional fine fingering with both hands." ([Doc. 8] at 20). As for his eyes, the ALJ found the plaintiff "can do no work that requires exposure to extreme heat, or work in the sunlight." (Id.). Concerning his tendency to be socially withdrawn, the ALJ found the plaintiff "can do no work . . . that requires contact with the general public" and "can do no [work that] requires close interaction with co-workers." (Id.).

For these reasons, the Court finds that the ALJ's consideration of the Snuffer opinion does not require a finding that the ALJ's RFC assessment at step three is not supported by substantial evidence.

### 2. Deluca Opinion

In his Objections, the plaintiff claims the ALJ erred by not adequately considering the Deluca opinion. ([Doc. 18] at 1). More specifically, the plaintiff argues that the ALJ erred when he rejected the Deluca opinion on the basis that Deluca was not an acceptable source of medical evidence. (Id. at 2). This Court finds, however, that substantial evidence supports the ALJ's RFC assessment at step three.

On April 12, 2007, Deluca authored an open letter to "express psychological

impressions" of the plaintiff. ([Doc. 8-2] at 78). Deluca notes that the plaintiff "presents as socially withdrawn, anxious, irritable, poorly motivated, feelings of worthlessness and poor self-esteem, embarrassment and discouragement over his physical limitations, mood swings, depressive symptoms, poor transitional skills, and numerous failings at career and job development activities." (Id.). Consequently, Deluca concludes that "[d]ue to the severe nature of his disability and the psychological effects present, this evaluator does not see [the plaintiff] being able to achieve proficient or successful integration into a workplace environment." (Id.).

In considering the Deluca opinion, the ALJ stated:

> The undersigned also accords less weight to the opinions of [Deluca] in [his April 12, 2007, letter] . . . [T]he opinion is offered by a counselor/social worker that is not considered to be "acceptable sources" of medical evidence by the regulations. Rather, opinions of this nature are accorded no more weight than opinions of public and private social welfare agencies, observations by non-medical sources, naturopaths, or physician assistants. (*Compare* 20 CFR 416.913(a) *with* 20 CFR 416.913(d)).

([Doc. 8] at 22).

This Court finds no error in the ALJ's consideration of the Deluca opinion. First, the ALJ does not reject the opinion but accords it less weight. Second, in according it less weight, the ALJ correctly referenced the difference between "acceptable medical sources," who "can provide evidence to *establish* an impairment," and "other sources" which are used only to "*show the severity* of [an] impairment[] . . .." 20 C.F.R. § 416.913(a), (d) (emphasis added). Third, in his RFC assessment, the ALJ adequately accounts for the limitations, both physical and emotional, listed by Deluca in his April 12, 2007, letter. Some examples include those listed above with regard to Snuffer's findings.

For these reasons, the Court finds that the ALJ's consideration of the Deluca opinion

9

does not require a finding that the ALJ's RFC assessment at step three is not supported by substantial evidence.

### 3. Posey Opinion

In his Objections, the plaintiff claims the ALJ erred by not adequately considering the Posey opinion. ([Doc. 18] at 1). More specifically, the plaintiff contends that the ALJ failed to provide any rationale for rejecting the Posey opinion. (Id. at 2). This Court finds, however, that substantial evidence supports the ALJ's RFC assessment at step three.

On June 22, 2007, Posey conducted a state agency consultative mental examination of the plaintiff. (See [Doc. 8-2] at 95-100). In finding that the plaintiff has several severe impairments at step two, including bilateral hand and foot deformities with ectrodactyly-ectodermal dysplasia syndrome, the ALJ noted:

> The claimant underwent a State Agency consultative mental examination on June 22, 2007, and it was noted that he had a history of drug and alcohol abuse, including one public intoxication arrest resulting in community service, and marijuana abuse every day since the seventh grade to help him sleep at night (Exhibit B10F/3). He was diagnosed with major depressive disorder, with psychotic features, social phobia, generalized anxiety disorder, and cannabis abuse (Exhibit B10F/5). He was noted to have severely deficient concentration, with a slow pace, and mildly deficient persistence (Exhibit B10F/6).

([Doc. 8] at 17).

Next, in finding that the plaintiff's severe impairments do not equal a listed impairment at step three, the ALJ found that the plaintiff's concentration is only moderately limited, disagreeing with Posey. In support of his finding, the ALJ emphasized that the plaintiff "has indicated that he likes to play drums and video games, activities which necessarily require significant concentration to complete for enjoyment." ([Doc. 8] at 19).

Though the ALJ does not further discuss Posey's findings, this was not error

because an ALJ need not conduct an extensive analysis of findings that are consistent with his conclusions. See **Oldaker v. Astrue**, 2010 WL 374972, *3 (N.D. W.Va. Jan. 27, 2010) (explaining that an ALJ need not address all evidence, but must address uncontroverted evidence upon which he chooses not to rely) (citing **Clifton v. Chater**, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). Here, Posey's findings that the plaintiff was able to work but would have a slow pace, and that the plaintiff was only mildly deficient in social functioning, (see [Doc. 8-2] at 96, 100), are consistent with the ALJ's conclusion that the plaintiff can perform a slow-paced work with limited interaction with others. ([Doc. 8] at 20). As such, the Court finds that the ALJ's consideration of the Posey opinion does not require a finding that the ALJ's RFC assessment at step three is not supported by substantial evidence.

**B.  ALJ's Decision to Discredit the Plaintiff's Subjective Complaints**

In his motion, the plaintiff alleges the ALJ improperly relied upon his daily activities to discredit his subjective complaints. The magistrate judge rejected this claim. The plaintiff objects to the magistrate judge's conclusion. For the reasons set out below, and those more fully stated in the R&R, this Court **OVERRULES** the plaintiff's Objections insofar as they relate to the ALJ's credibility determination.

At the hearing, the plaintiff presented testimony regarding his daily activities, currently and since filing for disability. ([Doc. 8] at 34-64). On the subject of social interaction, the plaintiff testified that he would be starting that month to attend Glenville State College to study music. (Id. at 36, 53). Similarly, the plaintiff testified that after filing for disability, he played drums in a band that performed a show once or twice a week in a bar, club, or house for up to 50 people. (Id. at 47-63). On the subject of the use of his

11

hands, the plaintiff testified that he had played the drums since the fourth grade. (Id. at 45). When asked how he managed to use drumsticks, he responded that he "just hold[s] them in his hands" and does not have to make any adjustments in order to play. (Id. at 45-46). Likewise, the plaintiff testified that he doesn't need any help taking a shower, taking a bath, styling his hair, trimming his beard, dressing himself, or toileting. (Id. at 53). The plaintiff also testified he had no trouble writing and played video games for a hobby. (Id. at 36, 55). On the subject of his treatment regimen, the plaintiff testified that he has not been prescribed pain medicine (Id. at 39). Concerning this last subject, the plaintiff also reported to Snuffer on September 23, 2008, that he was not taking his antidepressant medication. ([Doc. 8-3] at 46).

In addressing the plaintiff's credibility, the ALJ reasoned:

> The claimant is not entirely credible, and only fair at best, particularly with regard to his allegations of pain, limitations, and overall disability. Despite the claimant's congenital lack of digits in his hands and cracking skin, he has played drums since age 4, including playing in bands that perform inside clubs. He has also testified that he has feelings of self-consciousness and stress when he is around others. He has attended school, however, and changed his major to music in January of 2009. He has show no indication of social limitation when involved in band activities, or performing in public. His activities have also included playing video games, which would require significant use of the hands, just as would playing the drums. He has indicated that he has trouble grasping objects, but is able to write. He is able to dress himself and care for his personal hygiene, and he can use the telephone, prepare light meals, do the laundry, shop for food and do light housecleaning. The claimant has a significant history of marijuana abuse that he uses because it makes him feel better, according to his testimony. His physicians, however, have not prescribed the claimant medication of any kind for long-term pain management. The claimants has also had other evidence of not following prescribed treatment. For example, on September 23, 2008, the claimant complained that his depression had been getting worse, but that he was afraid of his antidepressant medications (Exhibit B19F/3). After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's

statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment for the reasons stated.

([Doc. 8] at 21).

In his Objections, the plaintiff claims the evidence the ALJ relied upon to discredit him was "a distortion and misrepresentation of [his] daily activities and the other credibility factors." ([Doc. 18] at 3). This Court finds, however, that substantial evidence supports the ALJ's credibility determination at step five.

The law governing an ALJ's credibility analysis is as follows:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms . . ..

Second, . . . the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's ability to do basic work activities.

See SSR 96-7p.

At step one of the credibility analysis, the ALJ found that the plaintiff has severe impairments, including bilateral hand and foot deformities with ectrodactyly-ectodermal dysplasia, which could reasonably be expected to produce the plaintiff's pain or other symptoms. At step two, however, the ALJ questioned the plaintiff's subjective complaints regarding the intensity, persistence, and limiting effects on his ability to do basic work activities. In so doing, the ALJ relied on the plaintiff's statements and other evidence regarding his daily living activities, like his playing drums in a band that performs in public, his playing video games, and his college attendance.

The plaintiff argues that the ALJ selectively cited statements regarding his daily living activities to discredit his subjective complaints, while ignoring other testimony which

13

showed he was limited in performing those activities.  For example, with regard to his playing in a band, the plaintiff argues the ALJ improperly ignored his testimony that he had no problem performing before concert crowds because it is "different cause [he's] on stage" and that he "never talked to anyone, . . . [he'd] play and then leave . . .."  ([Doc. 8] at 50).  As for his attending school, the plaintiff argues the ALJ improperly ignored evidence that he had difficulty coping with the stress of school and started drinking on the weekends.  Concerning his ability to use his hands, the plaintiff argues the ALJ improperly ignored that "[v]ideo games can be played with thumbs or two fingers" and that "[d]rum sticks can be held with two fingers and they are loosely held."  ([Doc. 14] at 6).

The plaintiff relies upon **Hines v. Barnhart**, 453 F.3d 559 (4th Cir. 2006) to support his argument of selective citation.  In **Hines**, the Fourth Circuit affirmed a district court which found that an ALJ erred when he selectively cited evidence concerning the daily activities of a claimant suffering from sickle cell disease.  **Id.** at 565-66.  In particular, the ALJ cited that the claimant raked his yard and cut his grass, occasionally did repairs such as fixing a door knob, and was active in his church as a deacon.  **Id.** at 566.  The Court found that this was selective citation because the ALJ improperly ignored the claimant's testimony that he "[r]akes the yard or tries mowing the grass [but] when [he] start[s] to feel bad [he] stop[s] and finish[es] up – maybe tr[ies] to finish up the next day . . .."  **Id.**  The Court found further selective citation in that the claimant had actually testified that he "probably" would "try to fix . . . a doorknob" and that he attends church only two or three times a month.  **Id.**

The Court is unpersuaded that the ALJ's credibility analysis was the result of

14

selective citation, as the plaintiff argues. First, the Court finds that it was not error for the ALJ to consider the plaintiff's participation in a band as weighing toward discrediting his subjective complaints concerning his reported "feelings of self-consciousness and stress when he is around others." ([Doc. 8] at 21). That the ALJ failed to mention that the plaintiff feels "different" on stage or would play and then leave was not selective citation. These statements do not weaken the fact that the plaintiff reported he was self-conscious around others yet actively participated in a band that performed concerts for up to 50 people in public places.

Second, the Court finds that it was not error for the ALJ to consider the plaintiff's school attendance as weighing toward discrediting those same subjective complaints of self-consciousness. That the ALJ failed to mention that the plaintiff had trouble in the past while attending school was not selective citation. This does not change that the plaintiff chose to continue attending college and actively changed his minor to music for the semester beginning the month of the hearing.

Third, the Court finds that it was not error for the ALJ to consider the plaintiff's playing the drums and video games as weighing toward discrediting his subjective complaints concerning his hand limitations. That the ALJ did not consider that both can be played with two fingers is not a proper argument for selective citation, as the plaintiff had not testified to that effect.

For these reasons, the Court finds that none of the plaintiff's arguments contradict the daily activities relied upon by the ALJ to discredit the his subjective complaints concerning the intensity of his symptoms. Thus, the Court finds that the ALJ's decision to discredit the plaintiff's subjective complaints does not require a finding that the ALJ's

decision at step five is not supported by substantial evidence.

C. **Portions of the R&R to which the Plaintiff Filed No Objections**[1]

Upon careful consideration of the record, the parties' motions, and the R&R, this Court finds that the magistrate judge committed no clear error with regard to the portions of the R&R to which the plaintiff filed no objections.

IV. Conclusion

Upon careful review of the R&R, it is the opinion of this Court that the Magistrate Judge's Report and Recommendation **[Doc. 15]** should be, and hereby is, **ORDERED ADOPTED** for the reasons more fully stated in the magistrate judge's report. Further, the plaintiff's Objections **[Doc. 18]** are **OVERRULED**. Therefore, this Court **ORDERS** that the plaintiff's Motion for Judgment on the Pleadings **[Doc. 11]** is hereby **DENIED** and the defendant's Motion for Summary Judgment **[Doc. 12]** is hereby **GRANTED**. Accordingly, the Court hereby **DISMISSES WITH PREJUDICE** the plaintiff's Complaint **[Doc. 1]** and **ORDERS** it **STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED**: December 6, 2010.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

---

[1] Upon a careful review of the plaintiff's Objections, the Court notes that the plaintiff does not object to the magistrate judge's rejection of his arguments regarding the previous disability decision or any new and material evidence. Accordingly, the magistrate judge's conclusions will be reviewed for clear error.